WR-83,489-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/22/2015 4:59:31 PM
Accepted 10/26/2015 7:51:53 AM
ABEL ACOSTA
CLERK

## No. WR-83,489-01

## IN THE COURT OF CRIMINAL APPEALS

---

## EX PARTE G'COBRA SMITH,
APPLICANT

---

On Application for Writ of Habeas Corpus in Cause No. 1449083-A,
Challenging the conviction in Cause No. 1449083,
From the 337th Judicial District Court of Harris County, Texas

---

## APPLICANT'S BRIEF

---

**Oral Argument Requested**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

NICOLAS HUGHES
Assistant Public Defender
Harris County, Texas
TBN: 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:     (713) 437-4316
nicolas.hughes@pdo.hctx.net

**ATTORNEY FOR APPLICANT**

**IDENTITY OF PARTIES AND ATTORNEYS**

APPLICANT:                                          G'COBRA SMITH


TRIAL PROSECUTOR:                          COBY LESLIE
                                                             Assistant District Attorney
                                                             Harris County, Texas
                                                             1201 Franklin Street, 6th Floor
                                                             Houston, Texas 77002


ATTORNEY AT TRIAL:                          JEANIE DICKEY
                                                             Attorney at Law
                                                             3115 Preston Road, Suite F
                                                             Pasadena, TX 77505


PRESIDING JUDGE AT TRIAL:              HON. RENEE MAGEE
                                                             337th District Court
                                                             Harris County, Texas
                                                             1201 Franklin Street, 15th floor
                                                             Houston, Texas 77002


ATTORNEY FOR STATE ON HABEAS:     INGER CHANDLER
                                                             Assistant District Attorney
                                                             Harris County, Texas
                                                             1201 Franklin Street, 6th Floor
                                                             Houston, Texas 77002


ATTORNEY FOR APPLICANT:                NICOLAS HUGHES
                                                             Assistant Public Defender
                                                             Harris County, Texas
                                                             1201 Franklin St., 13th Floor
                                                             Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS ................................................................. ii

TABLE OF CONTENTS ........................................................................................... iii

INDEX OF AUTHORITIES ........................................................................................ v

STATEMENT OF THE CASE ...................................................................................... 1

STATEMENT OF PROCEDURAL HISTORY .................................................................. 1

STATEMENT REGARDING ORAL ARGUMENT ........................................................... 2

ISSUE PRESENTED ................................................................................................. 2

STATEMENT OF FACTS ........................................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................................... 3

ARGUMENT .......................................................................................................... 4

1. Applicant's plea is rendered involuntary in light of the discovery that the plastic bottle seized from Applicant did not contain any illicit substances ........................... 4

    A. The standard of review employed in involuntary plea cases ............................ 4

    B. When reviewing the voluntariness of a plea in light of new exculpatory information, this Court should focus on the hypothetical question of what the Applicant would have done differently if he had known of the exculpatory information ........................................................................................................ 4

    C. Having conclusive evidence that the plastic bottle contains no controlled substances materially increases the strength of Applicant's case .......................... 6

    D. Applicant would not have pled guilty if he had known that the substance seized in his case did not contain any illicit materials ........................................... 8

2. In light of the revelation of material, exculpatory evidence, Applicant's conviction offends fundamental principles of fairness ............................................. 8

    A. Newly discovered evidence and Federal habeas caselaw ................................ 8

B. The use of unreliable evidence as the basis for conviction offends a person's right to due process ............................................................................ 9

C. In light of the newly discovered evidence, Applicant's conviction violates due process ....................................................................................... 10

3. The fact that the evidence contains no controlled substances has important legal implications in Applicant's case ................................................................. 12

A. Applicant's mere possession of a non-scheduled, non-prescription substance is not a crime, even if one believes it is truly a controlled substance ................. 12

i. By its own text, Section 481 does not apply to any substance which may be sold without a prescription ......................................................... 12

ii. Section 482 of the Health & Safety Code does not permit the prosecution of one who merely possesses a simulated controlled substance ................... 13

a. Section 482 of the Health & Safety Code is *in pari materia* with Section 481 of the Health & Safety Code ................................................. 13

b. Applicant may not be prosecuted for allegedly mere possession of a simulated controlled substance ................................................................. 14

B. The aggregate weight of the evidence, including "adulterants or dilutants" was improperly considered in fixing Applicant's punishment ............................ 15

i. "Adulterants or dilutants" can only be added to the aggregate weight in cases involving an actual controlled substance ................................................. 15

ii. Prosecutions for possession of "drank" are often classified by the weight of the adulterants and dilutants added to codeine syrup ................................ 17

iii. The weight of "adulterants or dilutants" was improperly considered in this case ............................................................................................................. 18

PRAYER ........................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................ 20

CERTIFICATE OF COMPLIANCE ........................................................................ 20

# INDEX OF AUTHORITIES

**Federal Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ...........................................................................9, 11

*Townsend v. Sain*, 372 U.S. 293 (1963) *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) ...........................................................................................................9

**State Cases**

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991) ..................................................17

*Brown v. State*, 491 S.W.2d 124 (Tex. Crim. App. 1973) .....................................................5

*Cheney v. State*, 755 S.W.2d 123 (Tex. Crim. App. 1988) ..................................................13

*Daughtry v. State*, 2003 WL 139599, Nos. 01-02-00250-CR, 01-02-00251-CR (Tex. App.–Houston [1st Dist.] Jan. 9, 2003, pet. ref'd) (mem. op., not designated for publication) ......................................................................................................................17

*Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996)................................................9

*Ex parte Henderson*, 384 S.W.3d 833 (Tex. Crim. App. 2012) ......................................2, 10

*Ex parte Hobbs*, 393 S.W.3d 780 (Tex. Crim. App. 2013) .............................................8, 10

*Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014)...........................................4, 5, 8

*Ex parte Smith*, NO. WR–83,489–01, 2015 WL 5453046 (Tex. Crim. App., Sept. 16, 2015) ...........................................................................................................................2

*Leonard v. State*, 385 S.W.3d 570 (Tex. Crim. App. 2012) .................................................9

*Massachusetts v. Scott*, 5 N.E.3d 530 (Mass. 2014).......................................................4, 5, 6

*Miles v. State*, 357 S.W.3d 629 Tex. Crim. App. 2011) .....................................................17

*Mills v. State*, 722 S.W.2d 411 (Tex. Crim. App. 1986) ....................................................13

*Nimer v. State*, No. 01-99-00229-CR, 1999 WL 997813 (Tex. App.–Houston [1st Dist.] Nov. 4, 1999, pet. ref'd) (mem. op., not designated for publication) ...........................7

*Oliver v. State*, 2015 WL 1933389, No. 14–13–00957–CR  (Tex. App.−Houston [14th Dist.] May 20, 2015, pet. ref'd) (mem. op., not designated for publication) ............. 17

*Pena v. State*, 353 S.W.3d 797 (Tex. Crim. App. 2011) ........................................................ 9

*Rodriguez v. State*, 879 S.W.2d 283 (Tex. App.−Houston [14th Dist.] 1994) (pet. ref'd) .................................................................................................................... 13, 14, 15

*Seals v. State*, 187 S.W.3d 417 (Tex. Crim. App. 2005) ............................................... 16, 18

*Sosa v. Warden*, No. CV020817531, 2004 WL 1925898 (Conn. Super. Ct. July 26, 2004) (unpub.) ......................................................................................................................... 11

*State v. Wilson*, 324 S.W.3d 595 (Tex. Crim. App. 2010) .................................................. 19

*Sweed v. State*, 2003 WL 22456107, No. 01-02-00486-CR (Tex. App.−Houston [1st Dist.] Oct. 30, 2003, no pet.)(mem. op., not designated for publication) ................. 18

*Whitfield v. State*, 916 S.W.2d 49 (Tex. App.−Houston [1st Dist.] 1996) (pet. ref'd) .... 14

**State Statutes**

TEX. GOV'T CODE ANN. § 311.021 (West 2013) ............................................................... 17

TEX. GOV'T CODE ANN. § 311.026 (West 2013) ............................................................... 14

TEX. HEALTH & SAFETY CODE ANN. § 481 (West. 2013) ......................................... 7, 14

TEX. HEALTH & SAFETY CODE ANN. § 481.002 (West 2013) ............................. 7, 15, 16

TEX. HEALTH & SAFETY CODE ANN. § 481.033 (West 2013) ...................................... 12

TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2013) .................................. 13, 16

TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2013) ...................................... 13

TEX. HEALTH & SAFETY CODE ANN. § 481.118 (West 2013) ........................... 16, 18, 19

TEX. HEALTH & SAFETY CODE ANN. § 481.119 (West 2013) ...................................... 16

TEX. HEALTH & SAFETY CODE ANN. § 481.120 (West 2013) ...................................... 16

TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2013) ...................................... 16

TEX. HEALTH & SAFETY CODE ANN. § 482 (West 2013) ............................................. 7, 14

TEX. HEALTH & SAFETY CODE ANN. § 482.002 (West 2013) ................................ 13, 16

TEX. HEALTH & SAFETY CODE ANN. § 483.041 (West 2013) ...................................... 16

TEX. PENAL CODE ANN. § 15.01 (West 2011) .......................................... 6, 18, 19

TEX. PENAL CODE ANN. § 6.04 (West 2011) .................................................. 7

TEX. PENAL CODE ANN. Ch. 15 ............................................................... 12

**Federal Regulations**

21 C.F.R. § 340 ............................................................................ 12

*Stimulant Drug Products for Over-the-Counter Human Use; Final Monograph; Final Rule*, 53
    Fed. Reg. 6100 (Feb. 29, 1988) .................................................... 12

**Other Authorities**

Anna Merlan, *Don't Panic, But There's Probably Meth in Your Ecstasy and De-Wormer In
    Your Cocaine* DALLAS OBSERVER (Mar. 6, 2012) *available at*
    http://www.dallasobserver.com/news/dont-panic-but-theres-probably-meth-in-
    your-ecstasy-and-de-wormer-in-your-cocaine-7145964 .............................. 7

Donna Leinwand, *DEA warns of soft drink-cough syrup mix*, USA TODAY (Oct. 19, 2006)
    ...................................................................................... 17

**Pleadings and Motions**

*Agreed Findings of Fact and Conclusions of Law, Ex parte Smith*, No. 1449083-A (179th
    Dist. Ct. Harris Cty., Tex. May 21, 2015) (filed June 16, 2015) ..................... 1

## STATEMENT OF THE CASE

On November 20, 2014, Applicant was charged for the possession of a plastic bottle suspected to contain a mixture of codeine cough syrup and other liquids. Without the benefit of a forensic analysis of the liquids inside the bottle, Applicant pled guilty to possession of substance in penalty group four (codeine and non-narcotic ingredients), at least 28 grams but less than 200 grams in weight. On March 23, 2015, the evidence inside the plastic bottle was tested and was determined not to contain any illicit materials. Applicant challenges the validity of the plea agreement in light of the newly discovered, exculpatory information.

## STATEMENT OF PROCEDURAL HISTORY

On November 20, 2014, Applicant was charged with possession of substance in penalty group 4 (codeine and nonnarcotic ingredients), at least 28 grams but less than 200 grams in Cause 1449083. Writ Exhibit 1. On November 24, 2014, pursuant to a plea agreement, Applicant pled guilty and was convicted. Writ Exhibits 2, 3. Applicant has collaterally challenged his conviction on the grounds that his plea was involuntary and that Applicant's conviction violates his right to due process. On June 16, 2015, the trial court entered agreed findings of fact and conclusions of law recommending relief. *Agreed Findings of Fact and Conclusions of Law, Ex parte Smith*, No. 1449083-A (179th Dist. Ct. Harris Cty., Tex. May 21, 2015) (filed June 16, 2015). On September 16, 2015, this Court filed and set this case for submission to "determine whether, under these circumstances, Applicant's plea to a lesser offense which was

1

arguably supported by the evidence was rendered involuntary by the subsequent discovery that the evidence would not have supported the greater charge. The parties shall brief these issues." *Ex parte Smith*, NO. WR–83,489–01, 2015 WL 5453046 *1 (Tex. Crim. App., Sept. 16, 2015).

## STATEMENT REGARDING ORAL ARGUMENT

Applicant's case falls squarely in the area where the post-conviction analysis of due process has yet to be fully articulated. *See Ex parte Henderson*, 384 S.W.3d 833, 835 (Tex. Crim. App. 2012) (Price, J. concurring). Additionally, Applicant's case presents a novel issue in terms of whether Applicant's plea was involuntary when he pleaded guilty to a lesser-included offense, an offense possibly supported by the evidence in this case. In light of the importance of this case, not only to the Applicant but to Texas jurisprudence as a whole, Applicant requests oral argument.

## ISSUE PRESENTED

"[W]hether, under [the] circumstances [of Applicant's case], Applicant's plea to a lesser offense which was arguably supported by the evidence was rendered involuntary by the subsequent discovery that the evidence would not have supported the greater charge." *Ex parte Smith*, 2015 WL 5453046 at *1.

## STATEMENT OF FACTS

On November 20, 2014, Applicant was arrested and charged with possession of substance in penalty group 4 (codeine and nonnarcotic ingredients), at least 28 grams but less than 200 grams. Writ Exhibit 1. Just four days later, Applicant pled

guilty to the lesser included offense of attempted possession of substance in penalty group 4 (codeine and nonnarcotic ingredients), at least 28 grams but less than 200 grams, was convicted, and was sentenced to 180 days in state jail. Writ Exhibits 2, 3, 4 On March 23, 2015, months after Applicant had been convicted, the Harris County Institute of Forensic Science tested the evidence seized in Applicant's case and determined that the evidence in this case did not contain any illicit materials, but was merely a caffeinated beverage. Writ Exhibit 5.

## SUMMARY OF THE ARGUMENT

With a laboratory report in hand indicating that no illicit materials were found in evidence seized by law enforcement, a defendant's prospects change dramatically when facing charges related to drug possession. The laboratory report can affect the plea negotiation process, the State's desire to prosecute or dismiss a case, the State's burden of proof, the legal defenses to the case, and the credibility of offense reports and witness statements made in connection with the case. Though the Applicant pled to attempted possession of a substance in penalty group 4 (codeine and nonnarcotic ingredients), at least 28 grams but less than 200 grams, an offense which may possibly be supported by the evidence in this case, the ultimate statutory offense of conviction and punishment exposure represent but a single facet of how an exculpatory lab report affects a drug possession case. In light of all the lost strategic, procedural, and evidentiary advantages that would have been afforded to Applicant if he had the laboratory report at the time of his plea, Applicant's plea is involuntary.

3

## 1. Applicant's plea is rendered involuntary in light of the discovery that the plastic bottle seized from Applicant did not contain any illicit substances

### A. The standard of review employed in involuntary plea cases

*Ex parte Mable* set forth the standard of review employed in cases where it is revealed that seized evidence does not contain any controlled substances:

> It is well established that a guilty plea must be entered knowingly and voluntarily. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. This means that the defendant must have sufficient awareness of the relevant circumstances. The standard is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant. In this case, all parties involved, including the applicant, incorrectly believed the applicant had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, the applicant cannot be said to have entered his plea knowingly and intelligently.

*Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

### B. When reviewing the voluntariness of a plea in light of new exculpatory information, this Court should focus on the hypothetical question of what the Applicant would have done differently if he had known of the exculpatory information

"[A] defendant's guilty plea […] may be vacated as involuntary because of external circumstances or information that later comes to light." *Massachusetts v. Scott*, 5 N.E.3d 530, 540 (Mass. 2014) (Massachusetts case stemming from laboratory head Annie Dookhan's pervasive misconduct). This Court has acknowledged that when laboratory testing is conducted and reveals the evidence in the case does not "contain

any illicit materials," the fact is "crucial to [the] case, and while operating under [a misunderstanding about the nature of the evidence,] the applicant cannot be said to have entered his plea knowingly and intelligently." *Ex parte Mable*, 443 S.W.3d at 130-131. But apart from the generally applicable proclamation that the Court must consider "all the facts and circumstances," there are few detailed examples of how the Court should evaluate an involuntary plea involving "newly discovered evidence." *Brown v. State*, 491 S.W.2d 124, 125 (Tex. Crim. App. 1973).

Applicant believes that *Massachusetts v. Scott* endorses legal principles compatible with Texas jurisprudence and applicable to this case:

> Therefore, in [the Applicant's] case, the [Court] may consider such relevant facts as the circumstances of the defendant's arrest and whether the [State] possessed other circumstantial evidence tending to support the charge of drug possession, along with the […] terms of the sentence […] he received and other facts that may come to light on reconsideration of the defendant's [case], including any anticipated collateral consequences stemming from accepting a plea offer rather than pursuing a trial by jury. Thus, we emphasize that the full context of the defendant's decision to enter a plea agreement will dictate the assessment of his claim that [the newly discovered evidence] would have influenced the defendant's decision to plead guilty. See *Ferrara*, 456 F.3d at 294 ("Because a multiplicity of factors may influence a defendant's decision to enter a guilty plea, a court attempting to answer this question must use a wide-angled lens").

*Massachusetts v. Scott*, 5 N.E.3d at 548. The *Scott* court cautioned against looking to how the prosecution might have corrected the problems exposed by the newly discovered

5

evidence,[1] as it "would require a court to heap inference upon inference and will bring the inquiry under this prong too far afield of the facts and circumstances actually known to the defendant at the time of his guilty plea." *Id.*

**C. Having conclusive evidence that the plastic bottle contains no controlled substances materially increases the strength of Applicant's case**

Knowing a forensic analysis conclusively indicates that seized materials contain no controlled substances is a material and exculpatory fact that has wide-ranging implications for a defendant:

1) Attempted possession of a controlled substance has less maximum criminal exposure than possession of a controlled substance. TEX. PENAL CODE ANN. § 15.01(d) (West 2011).

2) The State has an increased burden of proof in an attempted possession of a controlled substance case. The State must show that the defendant specifically intended to possess a specific drug, and may not prove that a defendant merely knowingly possessed what might – or might not have been – a controlled substance. TEX. PENAL CODE ANN. § 15.01(a) (West 2011).

3) Evidence that does not contain a controlled substance has no inherent evidentiary value, and the State would have to prove that a defendant attempted to possess a controlled substance by potentially ambiguous or innocuous contextual evidence (appearance of the packaging, appearance, color, smell, etc.) and by Applicant's admissible statements. In the context of what turned out to be merely a caffeinated beverage in a plastic cup, this would be a difficult showing.

4) Any observations by officers regarding Applicant's suspected codeine intoxication would lose credibility as there would be no forensic evidence to support those observations, potentially affecting the Court's analysis under the

---

[1] In the *Scott* case, the prosecution indicated that it would have offered to retest the evidence, had it known of Dookhan's misconduct. *Massachusetts v. Scott*, 5 N.E.3d at 548.

6

Fourth Amendment and the jury's analysis under Article 38.23 of the Code of Criminal Procedure.

5) Other significant legal challenges may hamper the state's case

a. Since the "doctrine of transferred intent" does not apply unless a person "caused a result," the State would be required to prove that Applicant was certain the beverage contained a mixture of codeine and other nonnarcotic medical ingredients, and that Applicant was certain that beverage had not been adulterated or contained some substitute drug in place of codeine cough syrup. *See* TEX. PENAL CODE ANN. § 6.04(b) (West 2011); Anna Merlan, *Don't Panic, But There's Probably Meth in Your Ecstasy and De-Wormer In Your Cocaine* DALLAS OBSERVER (Mar. 6, 2012) *available at* http://www.dallasobserver.com/news/dont-panic-but-theres-probably-meth-in-your-ecstasy-and-de-wormer-in-your-cocaine-7145964 (explaining that street drugs are often impure and that cheaper substitute drugs are often used in place of more expensive drugs).

b. As Texas Health & Safety Code § 481 is *in pari materia* with Texas Health & Safety Code § 482 when a simulated controlled substance is involved and Texas Health & Safety Code § 481 explicitly does not apply to over-the-counter drugs like caffeine, it is questionable whether a person can be prosecuted for mere possession of a simulated controlled substance. *See infra* at § 3(A).

c. "Adulterants and dilutants" are substances that increase the bulk of a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West 2013). Since no controlled substances were found in this case, it would seem that "adulterants and dilutants" could not be used to determine Applicant's punishment range. *See infra* at § 3(B).

6) Where no drugs are found in seized evidence, the State would be less inclined to prosecute a defendant's case. The only easily-found Houston-area appeal mentioning attempted possession of a controlled substance is a bizarre case where the defendant sought to find a crooked police officer to help him steal drugs from a cocaine dealer. *Nimer v. State*, No. 01-99-00229-CR, 1999 WL 997813 (Tex. App.–Houston [1st Dist.] Nov. 4, 1999, pet. ref'd) (mem. op., not designated for publication).

**D. Applicant would not have pled guilty if he had known that the substance seized in his case did not contain any illicit materials**

Within the full context of the decision to plead guilty, it is not possible to discount the significance of having the forensic report at the time of making a decision to plead or proceed to trial. *See Ex parte Mable*, 443 S.W.3d at 131. Applicant's claim is stronger than many claims which have led to relief in similar context. When a forensic analyst's practices were called into question in *Ex parte Hobbs*, this Court granted relief because the foundational evidence in the case was no longer reliable. *Ex parte Hobbs*, 393 S.W.3d 780, 781 (Tex. Crim. App. 2013). In *Ex parte Hobbs*, the defendant may, in fact, have committed the very offense he was convicted of, but uncertainty in the evidence necessitated a new trial. *Id.* In Applicant's case, there is no question of whether Applicant may have possessed codeine – the question has been conclusively answered that no, he did not possess codeine. In light of the new evidence, in the interest of justice, and to promote fairness, Applicant should be provided a new trial with the advantage of the laboratory report before Applicant makes any strategic critical decisions in his case.

**2. In light of the revelation of material, exculpatory evidence, Applicant's conviction offends fundamental principles of fairness**

**A. Newly discovered evidence and Federal habeas caselaw**

The Supreme Court has long recognized that a habeas applicant may be entitled to relief where newly discovered evidence "which could not reasonably have been presented to the state trier of facts" is presented and where the evidence "bear[s]

8

upon the constitutionality of the applicant's detention." *Townsend v. Sain*, 372 U.S. 293, 317 (1963) *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). The right to relief on the basis of newly discovered evidence is well settled when the evidence establishes a person's innocence or when exculpatory evidence is deliberately suppressed by the prosecution. *See Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (the suppression of *Brady* evidence violates a person's due process rights); *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996) (the incarceration of those who prove actual innocence by newly discovered evidence violates due process). Left unanswered by clear Federal precedent is what becomes of an applicant whose newly discovered evidence is exculpatory, but insufficient to establish actual innocence, and whose newly discovered evidence is not *Brady* evidence.

## B. The use of unreliable evidence as the basis for conviction offends a person's right to due process

Due process protects the accused from "an unfair trial," from unfair treatment, and a trial which "comport[s] with standards of justice," even absent any misconduct by any of the parties to a trial. *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963). The conviction of a person based on unreliable evidence has been found to offend due process by this Court in several different contexts. In *Leonard v. State*, the use of unreliable polygraph examinations to revoke a person's deferred-adjudication community supervision was found to offend due process. *Leonard v. State*, 385 S.W.3d 570, 582–583 (Tex. Crim. App. 2012). In *Ex parte Hobbs*, this Court determined that a

9

"forensic scientist did not follow accepted standards when analyzing evidence and therefore the results of his analyses are unreliable," violating the defendant's right to due process. *Ex parte Hobbs*, 393 S.W.3d at 781. In *Ex parte Henderson*, this Court concluded that where new scientific evidence convinced the testifying medical examiner to change his underlying opinion about the case, the applicant was entitled to relief. *Ex parte Henderson*, 384 S.W.3d 833, 833–834 (Tex. Crim. App. 2012). In that case, a majority of the Court concluded that the government had inadvertently used false or unreliable evidence. Changing science has cast doubt on the accuracy of the original jury verdict. *Id.* at 836-837 (Price, J. concurring, Cochran J. concurring). The link uniting these cases and other similar cases is that the Court lost its ability to conclude the defendant had been afforded a fair trial, whether or not any wrongdoing ever occurred. Applicant has shown that his conviction was "based in critical part upon an opinion from the [officer that has been] disowned because it has been shown by subsequent scientific [testing] to be [false]," and his conviction violates due process. *Id.* at 835 (J. Price, concurring).

## C. In light of the newly discovered evidence, Applicant's conviction violates due process

Without forensic testing showing that the evidence in this case contained no illicit materials, Applicant was at a marked disadvantage in the plea negotiation process. Even had Applicant protested his innocence, such claims often fall on deaf ears: overwhelming numbers of the accused protest their innocence, but many of

those have no basis for that claim. *See e.g. Sosa v. Warden*, No. CV020817531, 2004 WL 1925898, 9 (Conn. Super. Ct. July 26, 2004) (unpub.). ("[T]he claim of actual innocence is frequently raised in a petition for a writ of habeas corpus. Nevertheless, in many cases such as in the case at bar, the petitioner and his counsel do not make anything other than a cursory attempt to prove the actual innocence claim."). Without concrete proof that the plastic cup did not contain codeine, there was ultimately no reason for the prosecutor to believe that Applicant would eventually be vindicated.

Additionally, proof that codeine (along with nonnarcotic ingredients) could be detected in the plastic bottle was an essential element of the State's initial prosecution of the Applicant. The contents of the plastic bottle were material evidence, likely the most critical evidence in Applicant's case. If the main function of the due process clause is to ensure the accused receives a fair trial which comports with the standards of justice, then significant, exculpatory revelations which undermine the State's case must trigger due process protection. *Brady v. Maryland*, 373 U.S. at 87–88. It simply seems fundamentally unfair that Applicant made the most important decision in his case, the decision to plead guilty and waive trial, without the benefit of the clear, exculpatory evidence revealed in his case.

**3. The fact that the evidence contains no controlled substances has important legal implications in Applicant's case**

**A. Applicant's mere possession of a non-scheduled, non-prescription substance is not a crime, even if one believes it is truly a controlled substance**

**i. By its own text, Section 481 does not apply to any substance which may be sold without a prescription**

A substance is excluded from the application of the Controlled Substances Act if it "may lawfully be sold over the counter without a prescription, under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Section 301 et seq.)." TEX. HEALTH & SAFETY ANN. § 481.033(a, b) (West 2013). In 1988, the FDA approved caffeine as an over-the-counter drug. *Stimulant Drug Products for Over-the-Counter Human Use; Final Monograph; Final Rule*, 53 Fed. Reg. 6100 (Feb. 29, 1988). Since codification within the Code of Federal Regulations, the law regarding the over-the-counter dispensation of caffeine has remained relatively unchanged. *See* 21 C.F.R. § 340 et. seq. Inasmuch as Applicant possessed liquid containing caffeine, a substance which is explicitly excluded from the application of Section 481, it is improper to bring any prosecution under that section in this case. The State should not be permitted to utilize Chapter 15 of the Penal Code to defeat the principle enunciated in Section 481.033.

**ii. Section 482 of the Health & Safety Code does not permit the prosecution of one who merely possesses a simulated controlled substance**

**a. Section 482 of the Health & Safety Code is *in pari materia* with Section 481 of the Health & Safety Code**

The rule of *in pari materia* is a principle of statutory interpretation which is used

to harmonize statutes which apply in a similar context:

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being *in pari materia* though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

*Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988).

> General and special acts may be *in pari materia*. If so, they should be construed together. Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.

*Mills v. State*, 722 S.W.2d 411, 413–414 (Tex. Crim. App. 1986).

In the context of delivery of a fake controlled substance, appellate courts have

held that the offense of delivery of a simulated controlled substance under Texas

Health & Safety Code § 482.002 is *in pari materia* with offenses for delivery of a

controlled substance under Texas Health & Safety Code §§ 481.112-481.115. *See*

*Rodriguez v. State*, 879 S.W.2d 283, 286 (Tex. App.−Houston [14th Dist.] 1994, pet.

ref'd); *Whitfield v. State*, 916 S.W.2d 49, 52 (Tex. App.−Houston [1st Dist.] 1996, pet.

13

ref'd). In *Rodriguez*, the Fourteenth Court of Appeals concluded that Rodriguez should have been charged with delivery of a simulated controlled substance after delivering 400 grams of flour to law enforcement officers:

> In this case, although appellant could have been convicted under either statute, we find that Section 482.002 covers his actions with much greater precision than Section 481.112. Since there are conflicts between the statutes as to elements of proof and penalty provisions, the statutes are *in pari materia* and appellant should have been charged with the more specific offense of delivery of a simulated controlled substance.

*Rodriguez*, 879 S.W.2d at 286.

### b. Applicant may not be prosecuted for mere possession of a simulated controlled substance

While a person may be prosecuted for the mere possession of a controlled substance under Chapter 481 of the Health & Safety Code, Chapter 482 of the Health & Safety Code contains no such provision allowing the prosecution of a person who merely possesses a simulated controlled substance. The specific provision which deals with simulated controlled substances must prevail over the general provision defining controlled substance offenses: "[i]f the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." TEX. GOV'T CODE ANN. § 311.026 (West 2013). Even assuming that Applicant thought the substance in the plastic bottle contained codeine cough syrup, the only substance detected in the bottle was caffeine. Writ Exhibit 5. Under the rules of statutory construction, a court should

14

presume that Applicant's behavior constituted a lesser harm to society than [the possession] of an actual controlled substance," because the legislature decided not to penalize the mere possession of a simulated controlled substance. *Rodriguez,* 879 S.W.2d at 286.

## B. The aggregate weight of the evidence, including "adulterants or dilutants" was improperly considered in fixing Applicant's punishment

### i. "Adulterants or dilutants" can only be added to the aggregate weight in cases involving an actual controlled substance

While the definition of "adulterant or dilutant" is broad, it is a term that is defined in the context of a mixture of a controlled substance and some other substance:

> "Adulterant or dilutant" means any material that increases the bulk or quantity of a **controlled substance**, regardless of its effect on the chemical activity of the controlled substance.

TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West 2013) (emphasis added). In *Seals v. State*, over reservations about the wisdom of the definition of "adulterants or dilutants" and over questions of whether the Controlled Substances Act could be applied in an unconstitutional manner, this Court held that the definition of "adulterants or dilutants" must be interpreted according to its plain text:

> The literal meaning of the legislature's adulterant and dilutant definition is that any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant.

*Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005). However, unless a controlled substance is present in the mixture, the plain language of the statute does not authorize the inclusion of "adulterants or dilutants" when classifying a substance that is **not** a controlled substance.

As this Court has already noted, Texas's Controlled Substance Act places a heavy importance on context. For example, within the context of determining the aggregate weight of a controlled substance, an "adulterant or dilutant" means "any material that increases the bulk or quantity of a controlled substance," while within the context of drug paraphernalia, "adulterant or dilutant" is defined as a substance "that is used or intended to be used to increase the amount or weight of or to transfer a controlled substance." TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(17(F)), 481.002(49) (West 2013). Additionally, the importance of the weight of a controlled substance varies upon context: while the punishment of a controlled substance listed within a penalty group depends heavily on the weight or abuse units of the controlled substance, the punishment of the possession of controlled substances not listed in a penalty group, dangerous drugs, and the delivery of simulated controlled substance does not depend on weight. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112-481.118, 481.120-121 (controlled substances in a penalty group and marijuana); 481.119 (controlled substances not in a penalty group); 483.041 (dangerous drugs); 482.002 (simulated controlled substances). Only where the plain language of a statute would lead to absurd results may the court consider an interpretation that would arrive at a

16

sensible interpretation of that statute *See Boykin v. State*, 818 S.W.2d 782, 785–786 (Tex. Crim. App. 1991). It is not an absurd result to include adulterants and dilutants when measuring the quantity of a controlled substance mixture, but to exclude any adulterants and dilutants when considering a substance that contains no controlled substances. To the contrary, given that there is no prohibited substance to adulterate, it would be absurd to consider the weight of any "adulterants or dilutants" when determining the aggregate weight of something that is not a controlled substance. Excluding the weight of "adulterants and dilutants" in a case not involving a controlled substance gives effect to the entirety of the Controlled Substance Act and its related provisions. *See* TEX. GOV'T CODE ANN. § 311.021(2) (West 2013).

### ii. Prosecutions for possession of "drank" are often classified by the weight of the adulterants and dilutants added to codeine syrup

Codeine cough syrup is commonly recreationally abused as part of a beverage sometimes called "lean," "syrup," or "drank."[2] The codeine beverage often contains prescription codeine cough syrup, soda, and other inert ingredients like candy to make the beverage more palatable.[3]  Under Texas's liberal "adulterants and dilutants" definition, recreational users are frequently charged with felonies, as the weight of the

---

[2] *See Miles v. State*, 357 S.W.3d 629, 642 Tex. Crim. App. 2011) (defining drank); *Daughtry v. State*, 2003 WL 139599, Nos. 01-02-00250-CR, 01-02-00251-CR *1 at n. 1, 2 (Tex. App.−Houston [1st Dist.] Jan. 9, 2003, pet. ref'd) (mem. op., not designated for publication) (defining "lean" and "syrup").

[3] *See Oliver v. State*, 2015 WL 1933389, No. 14–13–00957–CR *1 (Tex. App.−Houston [14th Dist.] May 20, 2015, pet. ref'd) (mem. op., not designated for publication) (explaining how codeine is commonly recreationally abused); *see* Donna Leinwand, *DEA warns of soft drink-cough syrup mix*, USA TODAY (Oct. 19, 2006).

soda in "drank" can easily transform a possession of a small amount of codeine into a serious felony. *See e.g. Sweed v. State*, 2003 WL 22456107, No. 01-02-00486-CR, *1 (Tex. App.–Houston [1st Dist.] Oct. 30, 2003, no pet.)(mem. op., not designated for publication)(possession of the personal use of "drank" punished as a felony offense). The weight of the "adulterants or dilutants" can be considered regardless of whether the "adulterants or dilutants" increase the illicit retail quantity of codeine syrup or whether the "adulterants or dilutants" are used to convert codeine syrup into "drank" for personal consumption. *Seals*, 187 S.W.3d at 420.

### iii. The weight of "adulterants or dilutants" was improperly considered in this case

When Applicant was arrested, officers retrieved 178.736 grams of "red liquid substance" found in a plastic bottle, suspecting the substance to be "drank," and submitted the evidence for testing. Writ Exhibit 4. Before the evidence was tested and determined not to contain any illegal controlled substances, Applicant pled guilty. Writ Exhibit 3. Applicant was convicted of possession of a substance in penalty group 4 (a codeine mixture), at least 28 grams but less than 200 grams in weight. Writ Exhibit 3. The entire aggregate weight of the evidence, including soda or any other liquid part of the beverage, was used to determine Applicant's punishment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.118(c) (West 2013); TEX. PENAL CODE ANN. § 15.01(d) (West 2001). The maximum punishment Applicant could have faced for attempted possession of substance in penalty group 4 is a class C misdemeanor. *See*

18

TEX. HEALTH & SAFETY CODE ANN. § 481.118(c) (West 2013); TEX. PENAL CODE ANN. § 15.01(d) (West 2013). Applicant was ineligible for the state-jail sentence assessed. *State v. Wilson*, 324 S.W.3d 595, 598 (Tex. Crim. App. 2010).

## PRAYER

Applicant prays that this Court grant relief and remand his case to the trial court for a new trial.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this Applicant's Brief (Smith) has been served upon the Harris County District Attorney's Office – Conviction Integrity, on October 22, 2015 by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 4,506 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender